FREDERICKA HOMBERG WICKER, Judge.
| gDefendant, Donald Jones, seeks a Crosby appeal of his convictions for misdemeanor resisting arrest and felony possession of marijuana, second offense, violations of La. R.S. 14:108 and La. R.S. 40:966, respectively. Defendant argues the trial court erred in failing to grant his motion to suppress. For the following reasons, we find defendant’s assignment of error to be without merit and affirm his convictions. Due to two errors patent however, we remand this matter to the trial court.

PROCEDURAL HISTORY

On January 11, 2012, the Jefferson Parish District Attorney filed a bill of information in case number 12-109, charging defendant with possession of marijuana in violation of La. R.S. 40:966(0 (count one) and with resisting an officer in violation of La. R.S. 14:108. The Jefferson Parish District Attorney filed ^another bill of information on January 26, 2012, in case number 12-422, charging defendant with possession of marijuana, second offense, in violation of La. R.S. 40:966(C). Defendant was arraigned on January 31, 2012, and pled not guilty to possession of marijuana and resisting an officer in case number 12-109. Defendant was arraigned on March 1, 2012 in case number 12-422 and pled not guilty to the second offense possession of marijuana charge. Also on March 1, 2012, the state dismissed count one of the bill of information filed in case number 12-109.
On February 17, 2012, defendant filed, inter alia, a motion to suppress the evidence against him. On March 8, 2012, and March 13, 2012, the trial court held a hearing on defendant’s motion to suppress. At the conclusion of this hearing, the trial court denied defendant’s motion and defendant objected.
Defendant thereafter withdrew his former not guilty pleas and, under State v. Crosby, 338 So.2d 584 (La.1976), pled guilty as charged to resisting an officer in case number 12-109 and possession of marijuana, second offense, in case number 12-422. The transcript reveals that defendant reserved the right to challenge the denial of his motion to suppress. The trial court sentenced defendant to six months in Parish Prison for resisting an officer and *441 to five years imprisonment with the Department of Corrections for possession of marijuana, second offense.
The state then filed a multiple offender bill as to the marijuana possession charge to which defendant had already pled guilty. Defendant waived his rights with regard to this multiple offender bill and pled guilty to it. The trial court subsequently vacated defendant’s original sentence on the possession charge and resen-tenced him to six years imprisonment with the Department of Corrections. This enhanced sentence was imposed without benefit of probation or suspension of sentence, and was ordered to run concurrently with the sentence imposed in case number 12-109 for resisting arrest. The trial court reaffirmed that the plea was|4taken pursuant to Crosby, and then granted defense counsel’s oral motion to appeal.
On March 14, 2012, defense counsel filed a written motion for appeal in case numbers 12-109 and 12-422, which the trial court granted on March 20, 2012. Thereafter, defendant filed a motion to consolidate appeals with this Court. He explained that the two appellate numbers referred to two separate trial court case numbers that were charged under separate bills of information, but arose out of the same set of facts and were consolidated for purposes of the suppression hearing. He added that the matters were resolved by a Crosby plea, reserving his right to appeal the denial of the motion to suppress. Defendant asked that this Court consolidate the matters for appeal in the interest of judicial economy. On September 11, 2012, this Court ordered that the matters in 12-KA-640 and 12-KA-641 be consolidated.

JURISDICTIONAL NOTE

This Court’s appellate jurisdiction extends only to cases that are triable by a jury. State v. Chess, 00-164, p. 1 (La.App. 5 Cir. 6/27/00), 762 So.2d 1286, 1287 (citing La. Const, of 1974, art. 5 § 10; La.C.Cr.P. art. 912.1). Unless the punishment that may be imposed exceeds six months imprisonment, a misdemeanor is not triable by a jury. Chess, 00-164 at 1-2, 762 So.2d at 1287 (citing La. Const, of 1974, art. 1 § 17; La.C.Cr.P. art. 779;[1] State v. Robinson, 94-864, pp. 2-3 (La. App. 5 Cir. 3/15/95), 653 So.2d 669, 670).
In the present case, defendant was charged with and pled guilty to resisting an officer in violation of La. R.S. 14:108 in district court case number 12-109 (appeal number 12-KA-640). He was also charged with possession of marijuana in [ ¿violation of La. R.S. 40:966(C) in the same bill of information. However, the possession of marijuana charge was later dismissed. A bill of information was later filed in district court case number 12-422 (appeal number 12-KA-641), charging defendant with second offense possession of marijuana, a felony. La. R.S. 14:108(0 sets forth the penalty for resisting an officer: “Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.” A violation of La. R.S. 14:108 is a misdemeanor. See State in Interest of S.L., 11-883, p. 2 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 827 n. 2. On this basis, we find that this misdemeanor was not triable by a jury.[2] Accordingly, the proper procedure *442 for seeking review of a misdemeanor conviction is an application for writ of review directed to this Court to exercise its supervisory jurisdiction. See La.C.Cr.P. art. 912.1(C)(1); State v. Trepagnier, 07-749 c/w 07-750, p. 3 (La.App. 5 Cir. 3/11/08), 982 So.2d 185, 188, writ denied, 08-0784 (La.10/24/08), 992 So.2d 1033.
The long standing policy of this Court is to avoid converting matters that are improperly filed as appeals to writ applications. However, this Court will make an exception if the interest of justice would be better served by converting the filing to a writ application. Trepagnier, 07-749 c/w 07-750 at 3-4, 982 So.2d at 188.[3]
In Trepagnier, the defendant was charged with a felony in one bill of information and with three misdemeanors in a separate bill of information. The defendant waived his right to a jury trial on the felony charge and all charges were | ñtried by the judge. The defendant was found guilty as charged on all counts. The defendant filed a motion for appeal and designation of record in both the felony and misdemeanor cases. On defense counsel’s motion, this Court consolidated the cases on appeal. In its opinion, this Court noted the jurisdictional issue regarding the appeal of the defendant’s misdemeanor convictions. It acknowledged that the proper procedure for seeking review of a misdemeanor conviction is an application for writ of review, however, this Court found that the facts of the misdemeanor and felony convictions were intertwined to the point that the interest of justice would be better served by considering the matters together. Accordingly, this Court converted the defendant’s appeal of his misdemeanor convictions to a writ application.
In State v. Christophe, 12-82 (La.App. 5 Cir. 10/16/12), 102 So.3d 935, writ denied, 12-2432 (La.4/19/13), 111 So.3d 1029, the defendant was charged by bill of information with two felony counts of first degree vehicle negligent injuring. In a separate bill of information, the defendant was also charged with one misdemeanor count of vehicular negligent injuring, arising out of the same incident. The defendant appealed all three convictions. On appeal, this Court acknowledged that the proper procedural vehicle for a defendant to seek review of a misdemeanor conviction was by application for a writ of review. However, this Court noted that it had previously granted the defendant’s Motion to Consolidate the felony and misdemeanor appeals. Thus, the defendant asserted that because all charges arose out of one incident, judicial economy warranted this Court viewing the appeal on the misdemeanor as the equivalent of a writ application. Considering this Court’s grant of the defendant’s motion to consolidate, this Court decided both the defendant’s felony and misdemeanor convictions would be addressed simultaneously in the appeal.
*443 |7In this case, on the trial court level, the misdemeanor case was grouped together with the felony case for purposes of the motion to suppress hearing. Additionally, defendant’s guilty pleas and his sentencing in both matters occurred simultaneously. The misdemeanor and felony convictions appear intertwined to the point that the interest of justice is better served by considering the matters together. Accordingly, since this Court will already be reviewing the same suppression issue in defendant’s felony appeal, judicial economy dictates considering these matters together. Moreover, on September 11, 2012, this Court ordered that the matters in 12-KA-640 and 12-KA-641 be consolidated for review in one appeal.
Accordingly, considering this Court’s grant of defendant’s motion to consolidate, and the intertwined nature of the facts from which these convictions arise, we address both defendant’s felony and misdemeanor convictions simultaneously in this appeal.[4]

FACTS

Because this case is before us on guilty pleas, the facts were gleaned from the bill of information, arrest reports, and the transcript of the hearing on the motion to suppress.
At this hearing on defendant’s motion to suppress, Deputy Paul Dupuis testified that on December 17, 2011, headquarters dispatched him to the 1400 block of South Wilson Street in reference to possible drug activity or drug sales. The dispatch call described a tip regarding a black male with a hooded sweatshirt, outside of an orange and white house. Deputy Dupuis, who was familiar with the area from working in it for the previous three years, testified:
| J’ve been to the house several times on other drug arrests and other activities, so I was very familiar with right where to go. As I came into the area, I came down the street. I saw two black males in front of the house, one of them very large in size, probably upwards of 400 pounds. The second one would be Mr. Jones, [defendant,] standing in the driveway.
Deputy Dupuis then got out of his vehicle and asked the men to identify themselves. One of the men “complied” with Deputy Dupuis and stopped. The other man, defendant, however did not respond to Deputy Dupuis and began backing up towards the side alley of the house. Deputy Dupuis followed defendant to the area behind the house. Deputy Dupuis testified:
As I kept giving him verbal commands to identify himself, he briskly started walking to the rear of the house, he was standing there and would not remove his hand from his jacket, cause I asked him several times, I gave verbal commands very loudly, remove your hands from your jacket, and he fled on foot. He fled up the side of the house across two empty lots, through another backyard, where I have close pursuit, never lost sight of him. He went over a three foot chain link fence, and as he was — he actually made a complete circle. As he was coming up the side of 1346 South Wilson, he threw down a clear bag of green leafy vegetable matter which I picked up while in pursuit.... [A]s he *444 entered South Wilson, [Officer Brinser] was out there waiting for him. Where [Officer Brinser and I] handcuffed him, we read him his rights.
Officer Emily Brinser testified that she came to the 1400 block of South Wilson in response to radio dispatch calls in reference to a “black male standing in front of an orange and white house selling drugs.” Officer Brinser was familiar with the area and familiar with the orange and white house, stating that it was known as a “drug activity house.” When Officer Brin-ser arrived at South Wilson street, she saw a “few black males ... standing outside of the orange and white house.” One of these men matched the description of her dispatch call, “wearing a black hooded sweatshirt and dark colored jeans.” Deputy Dupuis was already at the scene when Officer Brinser arrived, and Deputy Du-puis’ chase of defendant started soon thereafter. Although Officer Brinser was not part of the chase, she |flsaw defendant running from the back of the house with Deputy Dupuis chasing him. She was at the end of the residence’s driveway with her taser drawn when she encountered defendant. She ordered defendant to the ground and he complied. Officer Brinser testified that she and Deputy Dupuis handcuffed defendant and that Deputy Du-puis read defendant his Miranda rights.
Deputy John Louis Walsdorf and Deputy Nunamaker came to the scene in response to a request for assistance with a subject running. By the time they arrived however, defendant was already in custody. Deputies Walsdorf, Nunamaker, and Dupuis walked the area and the entire length of the chase “looking for anything that could have been thrown throughout the path where” Deputy Dupuis followed defendant. They didn’t find anything. They then transported defendant to the Jefferson Parish Correctional Center.
Later at the police station, Kimberly Stierwald, a JPSO crime scene technician, tested the vegetable matter Deputy Du-puis had picked up during his chase of defendant. Ms. Stierwald’s test indicated that the substance was marijuana weighing 7.6 grams.

DISCUSSION

This matter is before this Court as an appeal pursuant to Crosby, supra. Defendant argues the trial court erred in denying his motion to suppress, arguing that because Deputy Dupuis did not have reasonable suspicion to stop him, the subsequently found marijuana should be suppressed. For the following reasons, we find that while this matter is properly before us on appeal pursuant to Crosby, supra, defendant’s assignment of error lacks merit.

Crosby Pleas

In the instant case, defendant entered a guilty plea pursuant to State v.Crosby, 338 So.2d 584 (La.1976). He now seeks appellate review of the trial |incourt’s denial his motion to suppress evidence. Ordinarily, when a defendant enters a guilty plea, he waives all pre-plea nonjurisdictional defects. State v. Torres, 281 So.2d 451 (La.1973). However, in State v. Crosby, supra, the Louisiana Supreme Court determined that the Louisiana courts of appeal may review assignments of error specifically reserved at the time a guilty plea is made and “where the trial court accepted the guilty plea so conditioned.” Id. at 588. The Crosby court only extended this ruling to those “assignments of error specifically reserved at the time of the plea of guilty.” Id.
Here, the trial court specifically stated that it was accepting defendant’s guilty pleas pursuant to Crosby, supra, and informed defendant that he could seek review of the trial court’s denial of his *445 motion to suppress. On this record, we conclude that defendant presented a detailed specification of which adverse rulings he sought to preserve on appeal and his assignment regarding the trial court’s failure to grant his motion to suppress is properly before this Court.[5]

Assignment of Error

As to the merits of defendant’s argument, that the trial court erred in denying his motion to suppress, we recognize the well established law in this field.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. War-rantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. State v. Wolff, 09-508, pp. 4-5 (LaApp. 5 Cir. 12/29/09), 30 So.3d 897, 901. The 11T exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of illegality, or “fruit of the poisonous tree.” State v. Nicholas, 06-903, p. 6 (LaApp. 5 Cir. 4/24/07), 958 So.2d 682, 686-87 (quotation omitted).
The state bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Honeycutt, 08-126, p. 6 (LaApp. 5 Cir. 5/27/08), 987 So.2d 250, 253. The trial judge’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id. at 6, 987 So.2d at 253-54.
There are three recognized tiers of interaction between police and citizens under the Fourth Amendment: (1) mere communication between officers and citizens where there is no coercion or detention, with such communication not implicating the Fourth Amendment; (2) the investigatory stop where the police may briefly seize a person if the officer has reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts; and, (3) a custodial arrest where the police must have probable cause to believe that the person has committed a crime. State v. Kang, 01-1262, p. 3 (LaApp. 5 Cir. 2/23/04), 866 So.2d 408, 412, writ denied, 04-0944 (La.11/24/04), 888 So.2d 226.
Reasonable suspicion is not required every time an officer approaches a citizen in a public place. Police officers possess the same right as any citizen to approach an individual and ask a few questions. State v. Jackson, 00-3083, p. 3 (La.3/15/02), 824 So.2d 1124, 1126 (per cu-riam), citing Florida v. Bostick, 501 liy.U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A police officer’s action of merely approaching an individual does not impli *446 cate the protections of the Fourth Amendment. State v. Jackson, swpra at 3, 824 So.2d at 1126.
However, law enforcement officers must have a reasonable suspicion of criminal activity in order to stop and interrogate an individual. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Bel-ton, 441 So.2d 1195, 1198 (La.1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In order to conduct such an investigatory stop, the police officer must have reasonable suspicion that the person is committing, has committed, or is about to commit an offense. Reasonable suspicion is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. State v. Honeycutt, supra at 7, 987 So.2d at 254.
The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Sam, 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. In determining whether an officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are | 13factors that may support reasonable suspicion for an investigatory stop. Sam, 08-220 at 5-6, 988 So.2d at 769-70. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. State v. Loeb, 09-341, p. 7 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 922, writ denied, 10-0681 (La.10/15/10), 45 So.3d 1110.
 When evaluating the totality of the circumstances, a defendant’s evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Enclade, 03-353, p. 6 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13. The Louisiana Supreme Court has recognized that it has expressly held or at least implied that the defendant’s flight from police officers is the most important factor in the totality of the circumstances analysis. State v. Morgan, 09-2352, p. 8 (La.3/15/11), 59 So.3d 403, 408. An individual’s mere presence in a high-crime area, standing alone, is insufficient to justify an investigatoiy stop; however, his presence in a high-crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. Loeb, 09-341 at 7, 34 So.3d at 922. “Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.” Morgan, 09-2352 at 9, 59 So.3d at 409 (quotation omitted).
For purposes of the Fourth Amendment, a person is “seized” when that person submits to the police show of authority or is physically contacted by the police. California v. Hodan D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 *447 (1991); State v. Sylvester, 01-607, p. 3 (La.9/20/02), 826 So.2d 1106, 1108. Under the Louisiana Constitution, a person is also “seized” when an actual stop is imminent. An actual stop is imminent “when the police come upon an individual with such force, that regardless of the individual’s attempts to flee or elude the 114encounter, an actual stop of the individual is virtually certain [to occur].” State v. Sylvester, supra (quoting State v. Tucker, 626 So.2d 707, 712 (La.1993)). Factors to consider in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the individual has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place and the number of police officers involved in the encounter. State v. Stanfield, 05-839, p. 7 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 716.
Here, defendant argues that the “dispatch” did not provide the officer with reasonable suspicion. He explains that he was observed standing on private property and when the officer approached him he chose to walk further onto his private property and was pursued. Defendant contends that the pursuit made it clear that he was not free to leave. Defendant explains that his decision to take flight and then abandon contraband was clearly in response to the illegal police provocation of demanding that he identify himself and the pursuit for failing to promptly comply with the officer’s demands.
The state responds that the trial court did not abuse its discretion in denying defendant’s motion to suppress the evidence. The state contends that defendant fled and abandoned contraband at a point where Deputy Dupuis had not made physical contact with defendant and where no actual or imminent stop had occurred. As such, the state concludes that the abandoned evidence was lawfully obtained.
Here, we find that when Deputy Dupuis exited his vehicle and asked defendant for his name, Deputy Dupuis had not “stopped” defendant such that | ^defendant’s Fourth Amendment rights were implicated. See State v. Sylvester, 01-607 (La.9/20/02), 826 So.2d 1106 (finding that no protected stop occurred where officers were on patrol in response to various citizen complaints of drug activity in a specific area and approached two men they saw inside a parked vehicle), State v. Thomas, 98-1024 (La.App. 5 Cir. 3/10/99), 734 So.2d 39 (finding that officers did not impermissibly stop the defendant when they recognized the defendant as a person who had been frequently interviewed and arrested, drove up to the sidewalk, exited their vehicle, approached and questioned the defendant). However, we also find that, after defendant had fled, Deputy Du-puis did stop and arrest defendant.
Both the United States and the Louisiana Supreme Courts have addressed the question of whether an officer had reasonable suspicion to stop an individual in circumstances similar to this matter.
In Illinois v. Wardlow, 528 U.S. 119,120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court held that an individual’s unprovoked flight through a high-crime area in response to the approach of the police provides reasonable suspicion to justify an investigatory stop. The Supreme Court stated, “[h]eadlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.”
*448 In State v. Lewis, 00-3136, p. 4 (La.4/26/02), 815 So.2d 818, 821 (per cu-riam), cert, denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002), the Louisiana Supreme Court determined that with or without reasonable suspicion, the officers had a right to approach and ask a few questions. The court found that the request for identification without any greater show of authority did not transform the encounter into a forcible detention and did not “provoke” defendant into flight. The Supreme Court further suggested that even assuming the foot 11Bchase initiated by the officer when the defendant turned and ran signaled that an “imminent actual stop” was about to occur, the totality of the circumstances known to the officer at the time, including the complaints of drug activity, the “hot spot” nature of the area, the defendant’s nervousness, and most important, his unprovoked headlong flight from the officer, gave rise to reasonable suspicion for an investigatory detention. See also State v. Loeb, supra; State v. Morgan, supra.
Applying this jurisprudence, we find that Deputy Dupuis had sufficient reasonable suspicion to stop defendant. Deputy Dupuis arrived at the scene after responding to a dispatch call regarding alleged drug activity at a house he knew was involved in such activity. Upon responding to the call and arriving at the house, Deputy Dupuis observed defendant standing outside wearing clothing that matched those of the person reported to be involved in the drug activity. Furthermore, when Deputy Dupuis approached defendant and asked for his name, defendant kept his hands in his pockets and began to flee. At this point, Deputy Dupuis had the necessary reasonable suspicion to stop defendant.
Because we find that Deputy Dupuis had the reasonable suspicion necessary to stop defendant when defendant began to flee, we find that defendant’s constitutional rights were not violated when Deputy Du-puis pursued defendant and picked up the marijuana that he threw down.[6] Therefore, we find that the trial court correctly denied defendant’s motion to suppress and defendant’s assignment of error on this appeal lacks merit.

ERRORS PATENT

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (LaApp. 5 Cir.1990). Our review reveals two errors patent requiring correction. |17Both relate to discrepancies between the transcript and the commitment in case number 12-KA-641, district court case number 12-109.
First, the transcript reflects that defendant pled guilty pursuant to Crosby. However, the commitment reflects that defendant pled under “Alford vs North Carolina.” Second, that transcript also reflects that the enhanced sentence was ordered to run concurrently with the sentence imposed in district court case number 12-109. However, the commitment in this case does not reflect the same.
Generally, if a discrepancy exists between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983).
Accordingly, we remand this case to the trial court and order it to amend the commitment to conform to the transcript. See State v. Francois, 04-1147, p. 6 (LaApp. 5 Cir. 3/29/05), 900 So.2d 1005, 1010; State ex reí. S.J., 10-990 (LaApp. 5 Cir. 5/24/11), *449 66 So.3d 1142, 1147. After making these change entries in the commitment, the trial court is also ordered to direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which defendant has been sentenced and to the Department of Correction’s Legal Department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06),' 937 So.2d 846 (per curiam).

CONCLUSION

For the foregoing reasons, we find defendant’s assignment of error to be without merit and therefore affirm his conviction. Due to two errors patent however, we remand this matter to the district court and order that it correct defendant’s commitment to conform to the transcript and to transmit that commitment to the officer in charge of the institution to which defendant has been sentenced and to the Department of Correction’s Legal Department.

AFFIRMED, REMANDED

. La.C.Cr.P. art. 779(A) provides: "A defendant charged with a misdemeanor in which the punishment, as set forth in the statute defining the offense, may be a fine in excess of one thousand dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict.”

. Further, although defendant was also originally charged with another misdemeanor, *442 possession of marijuana, in the same bill of information, a charge that was later dismissed, when the state charges a defendant with two or more misdemeanors in a single bill of information or indictment, La.C.Cr.P. art. 493.1 limits the maximum aggregate penalty that may be imposed for all of the misdemeanors to six months of imprisonment or a fine of one thousand dollars, or both. Chess, 00-164 at 2, 762 So.2d at 1287. As such, when two or more misdemeanors are joined in a single bill of information, the case is not triable by a jury. See Chess, 00-164 at 2, 762 So.2d at 1287-88.

. Such a "conversion should be the exception, not the rule as it contradicts the authority granted to appellate courts by the supreme law for his state.” State v. Flowers, 11-376, p. 3 (La.App. 5 Cir. 12/13/11), 81 So.3d 910, 910 n. 3.

. Generally, an error patent review is not conducted on misdemeanor convictions. Nevertheless, this Court has on occasion in the past considered a misdemeanor appeal as an application for supervisory review of the case and has conducted an error patent review. See State v. Carruth, 94-147, 94-148, p. 6 (La.App. 5 Cir. 9/27/94), 643 So.2d 1319, 1322.

. Compare State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196, 1197 (per cu-riam) ("[ajbsent a detailed specification of which adverse pre-trial rulings the defendant reserved for appellate review as part of his guilty plea, an appellate court should presume that the trial court permitted a Crosby reservation no broader than necessary to effectuate the underlying purpose of conditional guilty pleas i.e., to preserve review of evidentiary rulings which ‘go to the heart of the prosecution’s case’ that the defendant would otherwise waive by entering an unqualified guilty plea.”).

. Furthermore, after Deputy Dupuis recovered this marijuana, he had probable cause to arrest defendant for possession of marijuana and resisting arrest.