STATE OF LOUISIANA

VERSUS

SHANE SMITH

NO. 23-KP-399

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 94,880, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

December 27, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

**CONVICTION AFFIRMED; REMANDED FOR CLARIFICATION OF**
**SENTENCING RESTRICTIONS**
   **FHW**
   **JGG**
   **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
Joel T. Chaisson, II
Louis G. Authement

COUNSEL FOR DEFENDANT/RELATOR,
SHANE SMITH
Lauren D. Rogers

**WICKER, J.**

Defendant, Shane Smith, seeks supervisory review of his misdemeanor conviction and sentence for battery of a dating partner, first offense, in violation of La. R.S. 14:34.9. For the following reasons, we affirm defendant's conviction and sentence, except that we remand this matter and instruct the trial court to impose at least forty-eight hours of the sentence without the benefit of parole in accordance with La. R.S. 14:34.9(C), as more fully set forth in our Errors Patent Review below.

## STATEMENT OF THE CASE

On January 20, 2022, the St. Charles Parish District Attorney filed a bill of information charging defendant with battery of a dating partner, first offense, in violation of La. R.S. 14:34.9. On that same date, defendant entered a plea of not guilty. On November 10, 2022, after a bench trial, the trial court found defendant guilty as charged. On that same date, the court sentenced defendant to six months in the parish prison with all but the first forty-eight hours being suspended.[1] Defendant seeks supervisory review of his conviction, challenging the sufficiency of the evidence presented against him.

## FACTS

At trial, the victim, Shonette Sam, testified that she had known defendant since high school and had been romantically involved with defendant for approximately two years before the incident that led to defendant's arrest. Ms. Sam testified that, on May 6, 2021, defendant asked her for a ride from Hanhville to Des Allemands. Ms. Sam picked defendant up in her vehicle and drove to her house.[2] When she arrived home, she went into the house while defendant waited in the car. Ms. Sam testified that, a few minutes later, defendant walked into her

---

[1] The trial court further ordered that defendant be placed on active probation with the District Attorney's Office for a period of two years.

[2] Ms. Sam testified that defendant did not own a vehicle.

house and began making himself at home—sitting on the sofa, opening doors, and jumping on her bed. At some point while defendant was jumping on Ms. Sam's bed, she became frustrated and told him to get off the bed. She testified that, at that time, defendant "picked [her] up, slammed [her] on the ground."[3] Ms. Sam further testified that, as she continuously tried to "get [defendant] out" of her house, he punched her in the face, causing a knot and swelling near her eye.[4] She testified that after defendant left the house, she immediately called 9-1-1. She stated that while she was on the phone with 9-1-1, defendant returned and kicked the front door in, causing the frame and lock to break.[5] She denied that defendant returned to the home to retrieve his cell phone.

Ms. Sam testified affirmatively when asked if she had a "romantic relationship" with defendant. When asked about the nature of the romantic relationship, she responded, "We were just having sex." After the May 6, 2021 incident, Ms. Sam and defendant continued to have communication and contact. She testified that the two of them had "the same contact as before…everything. Texting, calling, sex. Same." Ms. Sam testified that in 2022, she had two surgical procedures and that defendant visited her after the procedures. She further testified that she spent Mardi Gras of 2022 with defendant and at some point in time had dinner with defendant at a restaurant. She stated that, on July 9 and 10, 2022, she spent time with defendant at bars in Killona, Edgard, and Kenner shooting pool.[6] Ms. Sam testified generally that, "Everywhere I go, Shane's there. If I go to Hot Spot, he's there. If I go to Killona, he's there. If I go to St. Rose, he's there. If I go to Kenner, he's there. He's everywhere I go." Ms. Sam stated that, approximately

---

[3] Ms. Sam testified that her twelve-year-old daughter was standing in the bedroom doorway and witnessed defendant push her onto the ground.

[4] The State introduced photographs of Ms. Sam's face into evidence. Ms. Sam testified that the photographs reflect swelling to her eye.

[5] Ms. Sam testified that her landlord required her to pay $300.00 for the damage defendant caused to the door.

[6] The State introduced into evidence Facebook messages exchanged between the parties on July 9 and 10, 2022.

four months prior to trial, she stopped contacting defendant and they have not communicated since.

At the conclusion of trial, the trial court found defendant guilty as charged and sentenced defendant to six months in the parish prison with all but the first forty-eight hours suspended.[7]

**DISCUSSION**

Defendant seeks supervisory review of his misdemeanor conviction for battery of a dating partner, first offense, in violation of La. R.S. 14:34.9, assigning two errors. First, defendant challenges the sufficiency of the evidence presented against him at trial, pointing to the absence of any police report, 9-1-1 recordings, or sufficient physical evidence. Second, defendant argues that his relationship with the victim was casual and purely sexual and, thus, Ms. Sam did not meet the definition of a "dating partner" as defined under La. R.S. 14:34.9(B); thus, defendant asserted that the State failed to prove each element of the crime under La. R.S. 14:34.9.

In defendant's first assignment of error, he challenges the sufficiency of the evidence presented against him at trial to support his conviction. In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885; *State v. Ordonez*, 16-619 (La. App. 5 Cir. 3/15/17), 215 So.3d 473, 477.

---

[7] The trial court also ordered that defendant participate in community service, pay various fines, and complete a substance abuse evaluation.

When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether a defendant's suggested hypothesis of innocence offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in the light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied*, 15-40 (La. 3/24/16), 190 So.3d 1189.

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Dixon*, 07-915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, *writ denied sub nom. State ex rel. Dixon v. State*, 08-987 (La. 1/30/09), 999 So.2d 745.

Defendant was convicted of battery of a dating partner, first offense. La. R.S. 14:34.9 defines battery of a dating partner as "the intentional use of force or violence committed by one dating partner upon the person of another dating partner." Criminal intent may be specific or general. La. R.S. 14:10. La. R.S. 14:34.9 does not specify if it is a general or specific intent crime. In the absence of a qualifying provision, the terms "intent" and "intentional" reference towards general intent. La. R.S. 14:11. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed

criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). In general intent crimes, "the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal." *State v. Harrell*, 18-63 (La. App. 5 Cir. 10/17/18), 258 So.3d 1007 (citing *State v. Howard*, 94-23 (La. 6/3/94), 638 So.2d 216, 217).

At trial, Ms. Sam testified that when she tried to stop defendant from jumping on her bed, he picked her up and slammed her on the ground. She further testified that when she told defendant to leave her home, he responded by punching her in the face, which caused a knot and swelling near her eye. The State introduced into evidence a photograph of Ms. Sam's eye taken after the incident. To demonstrate the escalation of events that evening, the State also introduced into evidence photographs of Ms. Sam's broken door frame, which supported her testimony that defendant attempted to return to the residence after she told him to leave. We find that none of the physical evidence introduced at trial conflicts with Ms. Sam's testimony.

As stated above, the testimony of one witness, if believed by the fact finder, is sufficient to support a conviction. *See State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50, 56 (affirming the defendant's felon in possession of a firearm conviction on the basis of witness testimony without any physical evidence); *State v. Page*, 08-531 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, *writ denied*, 09-2684 (La. 6/4/10), 38 So.3d 299 (affirming the defendant's second degree murder conviction obtained on the basis of witness testimony without any physical evidence). Therefore, we find the State presented sufficient evidence to show that defendant intentionally used force or violence upon Ms. Sam's person. This assignment is without merit.

In his second assignment of error, defendant claims that the evidence introduced at trial detailing his relationship with Ms. Sam—which he contends was

casual and purely sexual—does not support a finding that Ms. Sam was his "dating partner" as defined in La. R.S. 14:34.9(B). Defendant argues that the State failed to prove each element of the crime because it failed to prove that he and Ms. Sam were dating partners as defined and contemplated under the statute.

The disputed issue in this case is one of statutory interpretation, which is subject to *de novo* review. *State v. Maldonado*, 11-1090 (La. App. 5 Cir. 5/22/12), 96 So.3d 1221, 1224; *Harrah's Bossier City Inv. Co., LLC v. Bridges,* 09–1916 (La. 5/11/10), 41 So.3d 438, 445. The starting point in the interpretation of any statute is the language of the statute itself. *State v. Maldonado*, 96 So.3d at 1224. Interpretation of the language of a criminal statute is governed by La. R.S. 14:3, which states:

> The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

Additionally, La. R.S. 1:3 provides in part, "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."

We start our analysis with the words of the statute itself. Defendant was convicted of battery of a dating partner in violation of La. R.S. 14:34.9. Subsection (B) defines "dating partner" as follows:

> (3) "Dating partner" means any person who is involved or has been involved in a sexual or intimate relationship with the offender characterized by the expectation of affectionate involvement independent of financial considerations, regardless of whether the person presently lives or formerly lived in the same residence with the offender. "Dating partner" shall not include a casual relationship or ordinary association between persons in a business or social context.

Therefore, a dating partner is first "any person who is involved or has been involved in a sexual *or* intimate relationship with the offender… ." Defendant

does not dispute that he and Ms. Sam were involved in a sexual relationship. The statute continues to define a dating partner as one in an intimate or sexual relationship characterized by the "expectation of affectionate involvement." Therefore, the two factors that encompass a "dating partner" are: 1) a past or current sexual or intimate relationship, and 2) an expectation of affectionate involvement. The phrase "affectionate involvement" is not defined by La. R.S. 14:34.9, and it has not been interpreted under these circumstances by Louisiana courts.[8]

For purposes of statutory interpretation, courts have commonly used dictionaries as a valuable source for determining the "common and approved usage of words." *Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404, 411. Black's Law Dictionary defines "expectation" as "1. The act of looking forward; anticipation. 2. A basis on which something is expected to happen; esp., the prospect of receiving wealth, honors, or the like."[9] The term "affection" is defined as "a feeling of liking and caring for someone or something: tender attachment: fondness."[10] Black's Law Dictionary defines "affection" as "[f]ond attachment, devotion, or love." Finally, the term "involved" is defined as "having a part in something: included in something: actively participating in something: having a romantic or sexual relationship."[11] Therefore, considering the common usage of the words included in the phrase "expectation of affectionate involvement," we

---

[8] A review of other jurisdictions' jurisprudence reflects that Alabama has a similar, but not identical, statutory definition of a dating partner or dating relationship. See Ala. Code § 30-5-2 (which similarly excludes "a casual or business relationship" from meeting the definition of a "dating relationship" but further defines a dating relationship to include "an expectation of affectionate *or* sexual involvement by either party." See *W.T. v. H.S.*, No. 2210492, 2022 WL 4282314 (Ala. Civ. App. Sept. 16, 2022) (emphasis added).

[9] Black's Law Dictionary (11th ed. 2019).

[10] Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/affection.

[11] Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/involved. Black's law dictionary does not include a definition for "involvement" or "involved."

interpret that phrase to mean the prospect of liking someone or something that also includes having a romantic or sexual relationship.

Upon a *de novo* review of the record and the applicable law, we find that the State met its burden in this case to prove that Ms. Sam and defendant were dating partners as defined in La. R.S. 14:34.9(B). In the instant case, Ms. Sam described her relationship with defendant before and after the charged incident as "just having sex" and "texting, calling, sex." However, Ms. Sam also testified that she met defendant in high school and was romantically involved with him for approximately two years before he was arrested for the instant charge. Ms. Sam also testified that defendant did not have a car and testified to instances where she would provide transportation for defendant without any reference to financial compensation. At some point during their involvement, Ms. Sam gave defendant a key to her home, where her three children also lived, for approximately one month. We find that being involved in a romantic or sexual relationship with defendant for approximately two years, texting each other, calling each other, giving defendant a key to her home, chauffeuring defendant upon his request, hanging out with defendant, and bringing defendant to her home where her children were present supports a factual finding Ms. Sam and defendant were involved in a sexual relationship, and that they acted out on feelings of liking or caring for each other.

Ms. Sam testified that after the May 6, 2021 offense, until four months prior to trial, her relationship with defendant was essentially the "same" as before the incident. Ms. Sam testified that after defendant's arrest, Ms. Sam continued to involve defendant in her life in ways that were in addition to their sexual involvement. Ms. Sam testified that she had two surgical procedures in 2022, and that defendant visited her after those procedures. Defendant's visitation after

surgery could reasonably be considered an affectionate display of liking or caring for Ms. Sam.

Based upon the trial court's determination that defendant violated La. R.S. 14:34.9, the trial court found Ms. Sam credible and determined that her relationship with defendant was more than a casual relationship or ordinary association in a business or social context. Upon a review of the record and the applicable law, we find that the evidence supports a finding that defendant and Ms. Sam were "dating partners," at the time of the offense as contemplated under La. R.S.14:34.9—meaning they were involved in a sexual relationship with an expectation of affectionate involvement independent of financial considerations. This assignment of error lacks merit.

ERRORS PATENT REVIEW

Generally, an errors patent review is not conducted on misdemeanor convictions. Nevertheless, this Court has on occasion considered a "misdemeanor appeal" as an application for supervisory review of the case and has conducted an errors patent review. *See State v. Jones*, 12-640 (La. App. 5 Cir. 10/30/13), 128 So.3d 436, 443. A review of the record for errors patent according to La. C.Cr.P. art. 920 reflects the following errors requiring correction:

First, we point out that the trial judge failed to restrict the benefit of parole for at least the first forty-eight hours of defendant's sentence. La. R.S. 14:34.9(C) requires that at least forty-eight hours of the sentence be imposed without the benefit of parole, probation, or suspension of sentence. The court sentenced defendant to serve six months in the parish prison with all but forty-eight hours suspended and further placed defendant on active probation with certain conditions. However, the sentencing transcript reflects that the trial court did not specify the period of time during which defendant's sentence was imposed without the benefit of parole.

Generally, when a trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *State v. Shelby*, 18-186 (La. App. 5 Cir. 12/27/18), 263 So.3d 1223, 1228. However, in this case, La. R.S. 15:301.1 does not cure the lack of a specified time period for the restriction of benefits because the portion of the sentence to be served without benefits is left to the discretion of the trial court. *State v. Mouton*, 22-444 (La. App. 5 Cir. 12/29/22), 358 So.3d 106, 122.

Accordingly, we therefore remand this matter and instruct the trial court to impose at least forty-eight hours of the sentence without the benefit of parole in accordance with La. R.S. 14:34.9. *See State v. Jenkins*, 22-443 (La. App. 5 Cir. 2/27/23), 359 So.3d 1006, 1015 (case remanded for clarification of the defendant's sentence as to the restriction of benefits); *State in Interest of J.R.*, 22-339 (La. App. 5 Cir. 11/30/22), 354 So.3d 172, 179-80 ("Because the language of the sentencing provision gives the trial judge discretion in determining the exact length of time that benefits are to be restricted, we remand this matter and instruct the juvenile court to impose at least forty-eight hours of the disposition without the benefit of parole, probation, or suspension of sentence").

Second, the sentencing transcript does not reflect that the trial judge advised defendant of the provisions of La. C.Cr.P. art. 930.8, which states in pertinent part, "No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922." If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Taylor*, 20-215 (La. App. 5 Cir. 4/28/21), 347 So.3d 1008. Accordingly, we hereby advise defendant that no

application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See Taylor*, *supra*.

**DECREE**

For the reasons provided herein, we affirm defendant's conviction. Upon an errors patent review, we determine that the trial court failed to restrict the benefit of parole for at least the first forty-eight hours of defendant's sentence, as required under La. R.S. 14:34.9(C). We therefore remand this matter and instruct the trial court to impose at least forty-eight hours of the sentence without the benefit of parole in accordance with La. R.S. 14:34.9(C). In all other respects, we affirm defendant's sentence.

**CONVICTION AFFIRMED;
REMANDED FOR CLARIFICATION
OF SENTENCING RESTRICTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KP-399

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
LOUIS G. AUTHEMENT (RESPONDENT)

**MAILED**
LAUREN D. ROGERS (RELATOR)
ATTORNEY AT LAW
4224 FLORIDA AVENUE
SUITE 2
KENNER, LA 70065

HON. JOEL T. CHAISSON, II (RESPONDENT)
DISTRICT ATTORNEY
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057