liWILLIAMS, Judge.
The defendant, Lance Dorsey, was charged by bill of information with carrying a firearm on school property, a violation of LSA-R.S. 14:95.2. Following the denial of his motion to suppress evidence, the defendant pled guilty as charged, but reserved his right to appeal the trial court’s ruling.[1] Pursuant to a plea agreement, the trial court imposed a sentence of eighteen months at hard labor, with execution of the sentence to be suspended and defendant placed on supervised probation for a period of two years, subject to special conditions. Dorsey now appeals the trial court’s denial of his motion to suppress. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
Shortly after 11:00 p.m. on April 7, 1994, several resident assistants were walking on the campus of Northeast Louisiana University (NLU) and observed three African-American males standing near a convertible. One male used an object that appeared to be a knife to cut open the roof of the automobile. When the three men saw the witnesses, they fled the scene in a small vehicle. One of the resident assistants, Ms. Nweze, reported the attempted car burglary to the NLU campus police and Officer Montez Pate was dispatched to investigate. The witnesses informed the officer that the three men drove away in a compact blue car. They described one of the suspects as wearing a red and white striped shirt and a wide gold chain. Officer Pate advised the other officers to be on the lookout for a “small blue vehicle occupied by three black males, one with a red and white striped shirt and a ... large gold necklace.”
Shortly thereafter, Sergeant Randy Johnston of the NLU campus police reported that he had observed an African-American male, later identified as Abdul Turner, wearing a red and white striped shirt, a brown jacket and a large gold neck chain standing beside a blue Chevrolet Beretta. The car was parked outside of Monroe Hall, less than one mile from the scene of the attempted automobile *859 burglary. When Sergeant Johnston requested back-up, Officers Thomas and Eppinette arrived and all three approached the ^suspect. Sergeant Johnston testified that because one of the three suspects was thought to have a knife, he conducted a pat down of Turner to check for weapons for officer safety. During this frisk, he discovered a loaded, nickel plated .32 caliber revolver, which he removed from the suspect’s waistband. Sergeant Johnston told Officer Thomas to maintain surveillance of the car because two other suspects could be in the area. Sergeant Johnston then took the handcuffed suspect to the police office, which was located approximately forty yards away. He directed Officer Pate to bring the witnesses to the office so they could identify the suspect.
A short time later, Officer Thomas reported to Sergeant Johnston that another subject was approaching the Beretta. Sergeant Johnston left the first suspect in a briefing room and ran back to the ear. Officer Thomas observed the defendant, Lance Dorsey, and a woman leave the dormitory. The defendant opened the car door, leaned inside the vehicle, closed the door and stood talking with the woman. When Sergeant Johnston arrived, he advised the defendant that he was going to conduct a pat down search for the officers’ protection. Sergeant Johnston discovered a loaded .380 caliber semi-automatic pistol with one round in the chamber. Officer Pate arrived on the scene, handcuffed the defendant and took him to the police office. Pate testified that he was transporting the witnesses to the station when Officer Thomas reported a second suspect to Sergeant Johnston. ' Pate dropped off the witnesses at the station and left to back up Sergeant Johnston and Officer Thomas. Officer Pate testified that at this point, there had been no indication that the two suspects were not the men involved in the attempted automobile burglary. Then, at the station, the witnesses informed the officers that the suspects apprehended were not the same individuals involved in the attempted break-in. The defendant’s companion wore a shirt with vertical stripes, but according to the witnesses, the suspect they had seen was wearing a shirt with horizontal stripes. Sergeant Johnston testified that the witnesses did not make that distinction until after the suspects were in custody. The police arrested both the defendant and his companion for carrying a firearm on school grounds. The defendant filed a motion to suppress the gun seized during the hpat down search.
At the hearing on the motion to suppress evidence seized from Turner and the defendant, the trial court found that the NLU campus police had an eyewitness report of a crime involving some kind of cutting weapon, that defendant Turner and his car matched the description given to the police officers, that Turner was seen in close time and proximity to the crime scene and as a result, the police had reasonable suspicion to detain him and pat him down. The trial court also found that the defendant Dorsey approached the suspect automobile in close time and proximity to the crime scene, that the officers had reason to believe that the defendant might have a cutting weapon or a gun in his possession, since the other suspect was carrying a gun, and therefore, the police had probable cause to detain and frisk the defendant. The trial court denied the defendant’s motion to suppress. Defendant appealed the trial court’s ruling.
DISCUSSION
The defendant argues that the trial court erred in denying his motion to suppress evidence of the seized firearm. He contends that the facts of the case were insufficient to give the police reasonable suspicion to stop and search him without consent.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauna, 393 So.2d 688 (La.1981); LSA-C.Cr.P. Art. 215.1. The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.), writ denied, 626 So.2d 1177 (La.1993). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have “articu- *860 lable knowledge” of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Washington, supra.
|/This court has stated that reasonable suspicion can arise from information less reliable than that required for probable cause. State v. Daniels, 25,833 (La.App. 2d Cir. 3/30/94), 634 So.2d 962. In State v. Jackson, 337 So.2d 508 (La.1976), the court found that a police officer had reasonable cause to make an investigatory stop and was justified in conducting a limited search of the defendant’s clothing for a dangerous weapon when the officer had received a report of a recent armed robbery, the defendant fit the description given to law enforcement officers and was seen walking several blocks from the crime scene.
In the present ease, the suspects matched the general description of suspects seen committing the felony of attempted burglary. The co-defendant Turner was wearing clothing and jewelry which specifically matched the physical description initially provided by eyewitnesses. Moreover, his car was similar in color and size to the vehicle reportedly used by the suspects. Significantly, the defendant exhibited a connection to the suspect car when he opened the door and leaned inside. He was in close proximity to the crime scene. Officer Johnston knew a crime had been committed, the defendant matched the general description of the men observed at the crime scene, the knife still had not been found and Turner had possessed a concealed weapon. Consequently, the officer had reasonable suspicion to detain the defendant and to make a limited search of his clothing for weapons.
In his brief, the defendant asserts that the witnesses viewed Turner, and told police he was not the person involved in the vehicle damage, before Sergeant Johnston stopped and frisked the defendant. He argues that under those circumstances, the police did not have reasonable suspicion to detain and search him for weapons. However, the record does not contain any evidence to support this assertion.
To assess the validity of an investigatory stop under Terry v. Ohio, supra, and its Louisiana statutory equivalent, LSA-C.Cr.P. Art. 215.1, the critical inquiry must focus on the knowledge in the officer’s possession at the time of the stop and whether that knowledge constitutes reasonable cause for such a stop. State v. Washington, supra. |sIn this case, Officer Pate testified that he was transporting the witnesses to the NLU police office when Sergeant Johnston left to respond to the report of another suspect’s approach to the vehicle. Sergeant Johnston also testified that he left the police station prior to Officer Pate’s arrival with the witnesses. Both officers stated that they learned that the defendant and Turner were not involved in the vehicle burglary only after both suspects had been searched and arrested. Their testimony is uncontroverted.
Under the circumstances surrounding the investigatory stop and the search of the defendant, and in light of the information known to the police at the time of the stop, the record clearly supports the trial court’s finding that the officers possessed the requisite reasonable suspicion to make an investigatory stop of the defendant and to conduct a pat down search of his person. Therefore, this assignment of error lacks merit.
We have reviewed the record for error patent and found none.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. State v. Crosby, 338 So.2d 584 (La.1976).