STATE OF LOUISIANA

VERSUS

BERNARD R WILLIAMS

NO. 24-KA-568

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-4133, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

September 24, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
   **SMC**
   **JGG**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
BERNARD WILLIAMS
Bertha M. Hillman

COUNSEL FOR DEFENDANT/APPELLANT,
BERNARD R. WILLIAMS
Christopher A. Aberle

DEFENDANT/APPELLANT,
BERNARD R. WILLIAMS
In Proper Person

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Darren A. Allemand
Matthew Whitworth
Theresa King

**CHEHARDY, C.J.**

Defendant, Bernard R. Williams, appeals his conviction and twenty-year sentence for possession of a firearm by a convicted felon.  For the following reasons, we affirm Mr. Williams's conviction and sentence.

**PROCEDURAL HISTORY**

On September 27, 2023, the Jefferson Parish District Attorney filed a bill of information charging defendant, Bernard R. Williams, with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, on or about August 5, 2023. Williams was arraigned and entered a plea of not guilty on September 28, 2023.

Williams filed a *pro se* motion to suppress the evidence on October 16, 2023, and his counsel filed omnibus motions and an order for pre-trial motions, including a motion to suppress the evidence on November 28, 2023.  The motions came for hearing on January 24, 2024, where the district court denied the motion to suppress evidence.[1]  Trial of the matter commenced on June 11, 2024, and on the following day, the jury returned a verdict of guilty as charged.[2]

Defense counsel filed a motion for new trial, which was denied by the district court on July 25, 2024.  After defense counsel indicated that Williams was ready for sentencing, the district court sentenced Williams to twenty years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence, in addition to a one thousand dollar fine, which was suspended "in consideration of the DOC sentence."  The district court ordered the sentence to run consecutively to any and all other sentences which Williams may be serving and concurrently to Williams's misdemeanor conviction of resisting an officer in case

---

[1]    The district court also denied a motion to suppress statement, but the result of that motion is not before this Court on appeal.

[2]    The district court simultaneously tried Williams's misdemeanor charge for resisting an officer in case number 23-4557 and found Williams guilty.

number 23-4557. On August 26, 2024, defense counsel timely filed a motion for appeal, which the district court granted on August 27, 2024.

**FACTUAL BACKGROUND**

*Deputy Michael Morrison*

Deputy Morrison of the Jefferson Parish Sheriff's Office ("JPSO") testified that on August 5, 2023, while he was on night patrol, he was driving westbound on Morris Boulevard[3] in Jefferson, Louisiana, when he crossed over Gelpi Avenue and observed a black male riding in the opposite direction on a bicycle with no lights. The male was also pushing another bike by holding its handlebars. Deputy Morrison explained that illumination of the male's bike was required at night and that, in his opinion, the biker's action of pushing another bike was odd, suspicious, and raising "enough reasonable suspicion" that the bike could not have been his. Because of his suspicion, Deputy Morrison made a U-turn towards the suspect. He testified that the male made a left turn onto Gelpi Avenue going southbound. According to Deputy Morrison, as he turned onto Gelpi Avenue, the suspect pulled into a yard, which Deputy Morrison believed was located at 561 Gelpi Avenue. The suspect rode his bike behind an SUV and up to a gate at the end of the driveway into the backyard.

Deputy Morrison stated that he pulled over and made contact with the suspect. He introduced himself and asked the suspect why he had two bikes and why he was pulling into the driveway at that time of the night. The suspect explained that he was returning the bikes to the guy that lived there. Deputy Morrison testified that because he typically did not see people in that area at that time of night, he asked the suspect to return with him to his car. He described the suspect as acting rather nervous and kept saying, "No, I need to take the bikes, drop them off." Deputy Morrison was able to get the suspect to walk back to his

---

[3] The correct name of the street is "Morris Place."

car, but the suspect walked on the other side of the SUV parked in the driveway, causing Deputy Morrison to lose sight of the suspect. Deputy Morrison explained that he maneuvered around and walked back with the suspect to his unit. He testified that the suspect appeared nervous and was "double talking." Deputy Morrison asked the suspect whether he had any weapons on his person, to which the suspect responded, "No." Deputy Morrison began patting down the suspect and as he was at his midback, the suspect began to pull away. He advised the suspect to stop, but when the suspect attempted to take off, he grabbed the suspect's arm. The suspect "yanked his arm free" and ran off. Deputy Morrison testified that the suspect, who he described as younger than himself, got away from him. According to Morrison, the entire interaction was quick, lasting approximately forty-five seconds to one minute in duration.

Deputy Morrison testified that the suspect took off heading northbound on Gelpi Avenue, turned left on Morris Place, and then right onto Tucker Avenue. Deputy Morris searched the area from Gelpi Avenue to Central Avenue and up to the railroad tracks near Earhart Expressway. He noticed that there were no trains stopped on the tracks at the time, and that there was no "impediment" to stop someone from traversing across the tracks quickly. Deputy Morrison then got on "the radio" and notified officers that the suspect was running. When he lost sight of the suspect, Deputy Morrison went back to his police unit in order to continue searching for him.

Deputy Morrison testified that although he could not find the suspect, other officers were assisting him in the search to locate the suspect. He informed officers of the suspect's description, which was "approximately 5'7" to 5'10" … 140 to 170 pounds," and was wearing a dark blue shirt, tan brown pants, and had a scruffy, stubble beard and hair. Deputy Morrison stated that Officer Jairen Pichon and Deputy Justin McCubbins notified him that they had stopped an individual,

Bernard Williams, that matched the general description of the suspect. Deputy Morrison went to the location where Officer Pichon and Deputy McCubbins were detaining the suspect, and while the suspect had a beard, he was not the suspect who fled from Deputy Morrison. He explained that the individual being detained was wearing a navy-blue shirt and shorts.

### Officer Jairen Pichon

At trial, JPSO Officer Pichon testified that on August 5, 2023, while he was on patrol, he heard a request over the radio from Deputy Morrison for assistance with a subject who had fled a traffic stop. He stated that Deputy Morrison reported the subject was a "black male clad in dark clothing." Officer Pichon and other officers, including Deputy Justin McCubbins, began canvassing the area, and they located an individual matching the general description walking in the middle of Airline Highway. Officer Pichon recalled that when he and the other officers approached the suspect to question him, he appeared "somewhat hostile." When the suspect was ordered to get down on his knees and failed to comply, Officer Pichon pulled out his taser, and Deputy McCubbins pulled out his handgun. When the officers eventually got the suspect on his knees, officers were able to secure him in handcuffs.

Officer Pichon advised the suspect that he was being detained for investigative purposes, because he matched the description of the suspect who fled another officer. Officer Pichon told the suspect that once the officers obtained his information, and if Deputy Morrison did not identify him as the suspect, he would be released. According to Officer Pichon, he obtained the information from the suspect in good faith, believing he was the individual who had fled from Deputy Morrison. Officer Pichon twice advised the suspect of his *Miranda* rights due to his initial failure to comply with Officer Pichon's instructions. Before securing the suspect in the rear of a police unit, while the officers were conducting a search of

his person, they observed the suspect move his hands down towards his left back pocket. Officer Pichon then retrieved a small black semi-automatic pistol from the suspect's back pocket. According to Officer Pichon, his colleagues were rendering the weapon safe when they discovered that the pistol was loaded. The suspect told the officers that he was on parole. Officer Pichon made an in-court identification of Mr. Bernard Williams as the suspect he encountered on Airline Highway and subsequently arrested.

Officer Pichon testified that he was equipped with a body-worn camera during the encounter with Mr. Williams. He stated that the footage captured Mr. Williams in the middle of the road and that the timestamp reflected that it was August 5, 2023, at 11:54 p.m.

Officer Pichon stated that his initial contact with Mr. Williams, to the point where he placed Mr. Williams under arrest, took approximately fifteen minutes. He testified that he placed Mr. Williams under arrest "in good faith," because Deputy McCubbins sent a photo of Mr. Williams to Deputy Morrison, and Deputy Morrison verified that the person in the photo was the subject that ran away from him. Officer Pichon explained that eventually Deputy Morrison arrived at the location and informed him that Mr. Williams was not the man who actually fled from him.

### Deputy Michael Morrison

Deputy Morrison was recalled by defense counsel at trial and testified that he recalled "putting out" that the suspect who ran away from him was wearing a blue shirt and khaki or brown pants. Deputy Morrison's body-worn camera footage of his encounter with the suspect who fled from him was played for the jury. Deputy Morrison confirmed that the man was wearing a blue shirt and brown pants. Deputy Morrison stated that he may have told Deputy McCubbins that the suspect could have taken off his brown pants. He explained that in the photo he

received from Deputy McCubbins, the subject's head was tilted forward and he was wearing a black shirt, but that he did meet the "general description." Deputy Morrison told the officers that the subject in the photo looked like the suspect who had fled from him. He told the officers he would meet them in a couple of minutes. According to Deputy Morrison, the officers knew the subject they were looking for had fled from Deputy Morrison and that he was going to be arrested for flight from an officer.

### Dona Quintanilla

Ms. Quintanilla, a latent print supervisor for JPSO's crime lab, was accepted as an expert in latent print processing and analysis. She testified that prior to trial, she obtained Mr. Williams's fingerprints and placed them on a ten-print card. She also reviewed a certified conviction packet associated with Mr. Williams's former guilty plea in case number 08-5286 as to possession of cocaine, which contained two copies of Mr. Williams's fingerprints taken on August 3, 2009. According to Ms. Quintanilla, the fingerprints in the conviction packet matched the fingerprints she obtained from Mr. Williams prior to trial.

### Aaroneisha Hunter

Ms. Hunter testified that she had five children, and Mr. Williams was the father of one of them. She explained that on July 16, 2023, there was a shooting at her home in New Orleans East, during which two of her children were injured. While Mr. Williams was not living with her at the time of the shooting, because Ms. Hunter became frightened afterwards, she moved in with him shortly thereafter. According to Ms. Hunter, Mr. Williams was also upset and afraid.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Williams alleges three assignments of error: (1) his maximum sentence of twenty-years imprisonment at hard labor is constitutionally excessive; (2) the police lacked reasonable suspicion of criminal activity to justify

the stop, detention, and handcuffing him; and (3) his photo was so unclear as to depict nothing more than a "generic black male," obscuring the fact that he was *not* the wanted suspect and, thus, did not give rise to probable cause for the arrest.

**DISCUSSION**

### I. *Constitutional Excessiveness of his Sentence*

In his first assignment of error, Mr. Williams argues that his maximum sentence is constitutionally excessive because it is grossly disproportionate to the severity of the crime and is a needless infliction of pain and suffering. He argues that although the district court gave reasons for imposing the sentence, it did not give consideration to mitigating circumstances. He contends that when he was arrested, he told officers he needed the gun for protection and that this was corroborated by Ms. Hunter's testimony of the shooting at her house. Mr. Williams asserts that maximum sentences are imposed in cases involving the most serious violations of the described offense for the worst kind of offender of which he is not.

In response, the State argues the district court did not impose an excessive sentence and did not abuse its broad sentencing discretion. It asserts the legislative purpose of La. R.S. 14:95.1 is to limit possession of a firearm by persons who have committed certain specific serious felonies and who have demonstrated a dangerous disregard of the law. The State contends that the district court did consider the sentencing factors in La. C.Cr.P. art. 894.1. The State acknowledges that while Mr. Williams argues he needed the gun to protect his family, the district court observed that, at the time of this offense, Mr. Williams's family was nowhere near him and the court did not believe that outweighed Mr. Williams's carrying a gun in public. According to the State, the present case does not present a scenario in which Mr. Williams needed the gun in self-defense or in defense of others. The State notes that the district court considered Mr. Williams's previous convictions

and his use of an expletive when the jury verdict was read. The State also asserts that Mr. Williams will be able to earn "good time" pursuant to La. R.S. 15:571.3.

Before issuing Mr. Williams's sentence, the district court judge asked defense counsel whether there was anything by way of mitigation that she wanted to present. Defense counsel responded that a La. R.S. 14:95.1 conviction was usually incidental to a drug, robbery, or murder charge. She argued that in the instant matter, Mr. Williams was not doing anything other than crossing the street, and that it was merely a "twist of fate" that he got "caught up in the way he did."

The State responded that, in considering Mr. Williams's "cert pack," if Mr. Williams would have waited a couple more years, he would not have been in this situation because the ten-year cleansing period would have elapsed. The State also noted that Mr. Williams deliberately decided to possess a firearm during this period when he knew he should not possess one.

Before issuing Mr. Williams's sentence, the district court judge stated:

> The Court notes that Louisiana Code of Criminal Procedure Article 894.1 provides sentencing guidelines. The Court notes also that with respect to 95.1, there is a mandatory jail sentence of not less than five, no more than twenty years. That is without the benefit of probation, parole or suspension of sentence and a fine of not less than $1,000, nor more than $5,000. It is an "and" and not an "or."

> In considering the factors that the Court should consider, the Court notes that the following seem to be appropriate without going through all 22. The ones that are just applicable here and the Court did consider is that the offender used a dangerous weapon in the commission of the offense. Just based on the nature of the charge, having the weapon is the charge.

> The Defendant's criminal conduct and a mitigation fact is that the Defendant's criminal conduct either caused or threatened serious harm by having the firearm. The Court does find there was a threat of serious harm, and the Defendant did not contemplate his criminal conduct would cause or threaten serious harm.

24-KA-568                                   8

Under mitigation also there was substantial grounds tending to excuse or justify the Defendant's criminal conduct though failing to establish a defense. Mr. Angelette did present a defense indicating that Mr. Williams' family had been previously attacked. The Court notes at the time of this offense, however, the family was nowhere near Mr. Williams, and the Court does not believe that that weighs in mitigation of Mr. Williams' possessing a firearm out on a public street.

And then the Court is also to look at 28 in mitigation. The Defendant has no history or prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime. While the time was substantial, the Court notes that the Court was informed back on October 19th, 2023, at pretrial, that Mr. Williams was a quad plus and had a previous 95.1 from 2019 for which he was already backing up 20 years. That is an aggravating factor.

The Court also notes that the Court is authorized to consider other relevant aggravating circumstances, and I think this was very offensive, Mr. Williams. You might not have known I heard it, but when the jury verdict was read, you called the jury a bunch of bitches. I do not appreciate that. It was inappropriate, and all of these factors considered show that you had no remorse for your behavior, no remorse for what happened.

The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only. *State v. Harmon*, 19-570 (La. App. 5 Cir. 9/9/20), 301 So.3d 1278, 1288, *writ denied*, 20-1160 (La. 10/14/20), 303 So.3d 306. This Court has held that when the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the district court, they are not included in the bare review for constitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Clark*, 19-518 (La. App. 5 Cir. 6/24/20), 296 So.3d 1281, 1291, *writ denied*, 21-62 (La. 3/9/21), 312 So.3d 585. Here, defense counsel did not file a motion to reconsider sentence and only stated, "Your honor, note our objection to the sentence[.]" Trial counsel did not argue, as appellate counsel does

now on appeal, that the district court did not adequately consider mitigating circumstances. Accordingly, Mr. Williams is limited to a review of his sentence for constitutional excessiveness only. *See Clark*, 296 So.3d at 1291.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense, or imposes needless and purposeless pain and suffering. *State v. Adams*, 23-427 (La. App. 5 Cir. 4/24/24), 386 So.3d 676, 683.

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the district court's wide discretion. *Adams*, 386 So.3d at 676. In reviewing a district court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So.3d 779, 784-85. A district court should consider the defendant's personal history such as age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of the offense, and the likelihood of rehabilitation in determining an appropriate sentence. *Adams*, 386 So.3d at 686. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion when imposing a sentence.

*State v. Barnes*, 23-208 (La. App. 5 Cir. 12/27/23), 379 So.3d 196, 204, *writ denied*, 24-136 (La. 9/24/24), 392 So.3d 1141.

At the time Mr. Williams committed the offense,[4] the penalty provision for possession of a firearm by a convicted felon provided that whoever was found guilty of the crime should be "imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars or more than five thousand dollars." La. R.S. 14:95.1. Mr. Williams received a twenty-year sentence at hard labor without benefits, and the district court suspended the one thousand dollar fine.

Considering the nature of the crime, as well as the nature and background of Mr. Williams, the record reflects that Mr. Williams was walking down the middle of Airline Highway at 11:54 p.m. Officer Pichon testified that when he and other officers approached Mr. Williams, he was hostile, did not comply with orders, and resisted. Officer Pichon also testified that while searching Mr. Williams's person, he put his hands toward his left back pocket, which is where officers discovered a loaded firearm.

Regarding the nature and background of Mr. Williams, the record shows that Mr. Williams had a prior conviction for possession of cocaine, in violation of La. R.S. 40:967(C). The trial judge stated that Mr. Williams had led a "law-abiding life" for a substantial amount of time before the commission of the instant offense. However, the trial judge also recognized that it was informed at a pretrial hearing on October 19, 2023, that Mr. Williams was a "quad plus and had a previous 95.1 from 2019 for which he was already backing up 20 years."

The third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. Although a comparison of sentences

---

[4] *See State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, 520.

imposed for similar crimes may provide guidance, "[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Mejia*, 23-161 (La. App. 5 Cir. 11/29/23), 377 So.3d 860, 889, *writ denied*, 23-1722 (La. 5/29/24), 385 So.3d 705. While comparison with other similar cases is useful in itself and sets the stage, the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense. *Id.*

In *State v. Stewart*, 24-50 (La. App. 5 Cir. 10/30/24), 398 So.3d 812, 818, *writ denied*, 24-1445 (La. 2/19/25), 400 So.3d 931, the defendant was found guilty of two counts of La. R.S. 14:95.1. The district court sentenced the defendant to two twenty years sentences at hard labor without benefits to run concurrently. In sentencing the defendant, the district court acknowledged the defendant's previous convictions, which all involved controlled dangerous substances. *Id.* at 824. This Court discussed testimony that the defendant's firearm was found with a live round in the chamber and a full magazine. *Id.* at 825. It also discussed the defendant's previous convictions and stated that the jurisprudence showed that similarly situated defendants with substantial criminal records received similar sentences to the defendant. *Id.* at 826. This Court upheld the defendant's sentences and found that they were not constitutionally excessive. *Id.*[5]

Similarly, in *State v. Charles*, 20-498 (La. App. 3 Cir. 5/5/21), 318 So.3d 356, the defendant was sentenced to twenty years imprisonment for possession of a firearm by a convicted felon. The reviewing court found that the district court implicitly considered the statutory sentencing guidelines. The defendant had five prior felony convictions. *Id.* at 365. The revolver in the defendant's possession

---

[5] In its errors patent review, this Court found that the district court failed to impose the mandatory fine required by La. R.S. 14:95.1, and because the defendant had private counsel, it remanded the matter for the district court to hold a hearing under La. C.Cr.P. art. 875.1, to determine whether the mandatory fine should be imposed. *Stewart*, 398 So.3d at 826.

contained two spent rounds and a loaded round in the chamber. The reviewing court found that the maximum sentence was not excessive. *Id.* at 367.[6]

In the instant matter, we find the district court did not abuse its broad sentencing discretion by imposing the twenty-year sentence for Mr. Williams's conviction of possession of a firearm by a convicted felon. The record shows that Mr. Williams placed officers, and any possible bystanders, in danger when he was walking in the middle of Airline Highway at night with a loaded firearm. The district court acknowledged defense counsel's "defense" that suggested that Mr. Williams's family had been previously attacked and that he had the gun for protection; however, the facts reflect that Mr. Williams was alone at the time he was walking down the middle of Airline Highway and was not near his family. Further, we consider Mr. Williams's misdemeanor conviction of resisting an officer that stemmed from the same incident. We also take into account Mr. Williams's criminal history, along with his status as a quadruple offender. Additionally, we note that the district court suspended the mandatory fine required by La. R.S. 14:95.1.

After review, we find the record adequately supports Mr. Williams's sentence and indicates that the sentence is not constitutionally excessive. This assignment of error lacks merit.

## II. *Reasonable Suspicion of Criminal Activity and Probable Cause for Arrest*[7]

In his second and third assignments of error, Mr. Williams contends that the police lacked reasonable suspicion of criminal activity to justify their stopping, detaining and handcuffing him. He also argues that the photo taken of him was so

---

[6] In its errors patent review, the court found that the district court failed to impose the mandatory fine required by La. R.S. 14:95.1. However, it did not remand the matter for imposition of the fine. *Charles*, 318 So.3d at 359.

[7] Assignments of error numbers two and three are addressed together because they are related and because both appellate counsel and Mr. Williams argue that they are reasons for why the district court erred in denying the motion to suppress.

unclear as to depict nothing more than a "generic black male"—thus obscuring the fact that he was *not* the wanted suspect—and did not give rise to probable cause for his arrest. Specifically, Mr. Williams argues that this general description does not support a finding of reasonable suspicion and that it is not authorized under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Mr. Williams contends that the district court's alternative ruling, that the stop was justified because Mr. Williams was acting erratic and walking in the middle of Airline Highway, was erroneous because the "erratic behavior" happened after he was placed under arrest. He further argues that while Officer Pichon agreed with the State's suggestion that it was "inherently suspicious for an individual to be walking down the middle of Airline Highway in the middle of the night," it was unclear how such behavior could give rise to an articulable suspicion that a crime had been or was about to be committed. Mr. Williams posits that the district court's reliance on these factors was misplaced.

In response, the State claims the investigatory stop of Mr. Williams was supported by reasonable suspicion. In particular, it argues that Officer Pichon's reliance on Deputy Morrison's description of a black male clad in dark clothing was not too generic of a description, and Mr. Williams's other actions and features gave Officer Pichon reasonable suspicion to conduct an investigatory stop.

In reply, Mr. Williams argues that the objective factors the State relies upon as Officer Pichon's basis for reasonable suspicion are inadequate. He contends that while the State claims he was "sweating profusely," the State conceded at the hearing that it was August in New Orleans. He reiterates that the alleged hostile behavior occurred after and as a result of the stop, and cannot be used as a basis for reasonable suspicion under these circumstances. He further contends that his action of walking in the "middle" of the street before his detention is a "mere unelaborated assertion" that fails to define criminally suspicious behavior.

As to having probable cause to arrest him, Mr. Williams argues that even if the police had reasonable suspicion to conduct an investigatory stop, they had no probable cause to arrest him. Mr. Williams avers the district court appears to have accepted that probable cause arose when Officer Pichon concluded that Mr. Williams was the suspect the police were searching for. Mr. Williams contends that the officer's subjective belief is not a test nor was it relevant that Officer Pichon acted in good faith when he arrested Mr. Williams.

Mr. Williams asserts that Officer Pichon claimed that Deputy Morrison "confirmed" from the photograph sent to him that Mr. Williams was the person who fled from him. He contends, however, that Deputy Morrison testified that he only told Officer Pichon that he could not rule Mr. Williams out from the dark photo. He argues that if Officer Pichon's version of events is accepted, Deputy Morrison acted unreasonably by confirming a positive identification from a photo in which Mr. Williams's facial features could not be discerned due to the downward angle of his head. Alternatively, he argues that if Deputy Morrison's testimony was to be believed, Officer Pichon acted "objectively unreasonable" by arresting Mr. Williams before Deputy Morrison arrived on the scene, despite knowing that Deputy Morrison said Mr. Williams "could be" the person he was searching for if Mr. Williams had changed his clothes.

In response, the State contends that Officer Pichon had probable cause to arrest Mr. Williams when Deputy Morrison responded to him that Mr. Williams was the suspect who had earlier fled. It argues that the fact that, upon closer examination, Deputy Morrison realized that Mr. Williams was not the subject, does not negate the probable cause to arrest at that moment. The State avers that to the extent Mr. Williams complains about credibility issues relative to the police officers, the district court's determination as to the credibility of witnesses on a motion to suppress is to be accorded great weight on appeal unless unsupported by

the evidence. It further argues that the determination of probable cause does not require the resolution of conflicting evidence as required at trial, and the facts need not eliminate all possible innocent explanations to support a finding of probable cause.

Alternatively, the State argues that even if Officer Pichon did not have probable cause to arrest Mr. Williams, he had reasonable suspicion to detain him until Deputy Morrison arrived. It contends that having the reasonable suspicion to do so, and given Mr. Williams's combativeness, Officer Pichon would have the right to perform a limited search of weapons under *Terry*, *supra*, and La. C.Cr.P. art. 215.1, and ultimately discover the firearm.

In reply, Mr. Williams argues that, contrary to the State's assertion, he does not complain about the officers' credibility, but rather, that Officer Pichon's or Deputy Morrison's testimony was "hopelessly irreconcilable" regarding what Deputy Morrison actually conveyed to Officer Pichon regarding the photo of Mr. Williams. He argues that at the suppression hearing, Officer Pichon's testimony was self-serving and "arrest-saving" so that the district court would not have known that his testimony would contradict Deputy Morrison's trial testimony. Mr. Williams further argues that, regardless, there was no probable cause to arrest him in either version.

### A.    Suppression Motion and Hearing

On October 16, 2023, Mr. Williams filed a *pro se* motion to suppress the evidence wherein he urged that the evidence to be used against him was not seized or obtained incidental to a valid arrest and/or search, but instead, was the result of an unlawful search without a warrant and without probable cause. On November 28, 2023, defense counsel filed omnibus motions, which also included a motion to suppress the evidence, wherein counsel argued that Mr. Williams's constitutional

rights, as guaranteed by the Constitutions of the United States and Louisiana, had been violated because the evidence was illegally and unlawfully obtained.

At the motion hearing held on January 24, 2024, Officer Pichon testified that on August 5, 2023, he responded to a request for assistance by another officer. He stated that Deputy Morrison encountered a suspicious individual who "took off" from him. He explained that he and other officers were called to the area and were canvassing Airline Highway. They observed Mr. Williams walking in the middle of the highway, sweating profusely, and matching the description provided by Deputy Morrison; that is, "a black male clad in dark clothing." He stated that Mr. Williams was wearing a dark t-shirt and long denim shorts. He testified that he and Deputy McCubbins approached Mr. Williams and informed him that he matched the description of a suspect they were looking for and that he would be detained pending an investigation. Officer Pichon stated that Mr. Williams was placed in hand restraints for officer safety and that Mr. Williams was "a little elevated." He explained that Deputy Morrison was contacted via the radio and told that they had detained a black male matching the description of the suspect who fled. Deputy Morrison asked for a photograph of the individual. He stated that he and Deputy McCubbins sent the photograph of Mr. Williams to Deputy Morrison, who confirmed that Mr. Williams was the individual who had fled from him.

Officer Pichon further testified that after receiving the confirmation from Deputy Morrison, which he received in "good faith," he advised Mr. Williams of his *Miranda* rights and explained that he was going to be placed under arrest. Officer Pichon stated that Mr. Williams conveyed that he understood his rights and told the officers that he was on parole. Officer Pichon testified that before he was able to search Mr. Williams "incident to arrest," Mr. Williams began reaching towards the air, and he asked Mr. Williams what he was searching for. Officer Pichon then searched Mr. Williams's pockets and found a firearm in his back

pocket. Officer Pichon told the other officers on the scene about his discovery of the weapon. He testified that Mr. Williams's name was searched in the system, and it was determined that he was a convicted felon. Mr. Williams was then placed under arrest for felon in possession of a firearm. Officer Pichon testified that, ultimately, he and the other officers were told that Mr. Williams was actually not the suspect who fled from Deputy Morrison.

At the hearing, defense counsel argued that Mr. Williams was bald and that it was an "outstanding feature" that did not go out as part of the description of the suspect. She argued that the description provided was that the suspect had short hair and was wearing either brown pants or brown shorts, depending on the document read.[8] Defense counsel stated that Mr. Williams was wearing long shorts and that it would be unreasonable to believe that he could have taken off his pants and was wearing the shorts underneath, because pants would not fit over Mr. Williams's shorts. She argued that Mr. Williams did not match the description that was broadcast over the radio and was not found in the vicinity of the street where the suspect had fled from Deputy Morrison.

The State responded that the officers needed only a "reasonable articulable suspicion" that Mr. Williams had or was about to commit a crime, and that Officer Pichon articulated a number of reasonable suspicions that drew his attention to Mr. Williams, who was sweating, acting erratically, and walking down the middle of Airline Highway at night. The State claimed that Officer Pichon was facilitating a search for a suspect who ran from another officer, and he was within the law to conduct an investigatory stop and conduct a *Terry* pat-down search. It argued that it was at this point that "a new offense had been discovered," *i.e.*, the concealed

---

[8] During the hearing, defense counsel referenced Deputy Morrison's supplemental report, which provided the suspect's description as a "Black male, 5'7' to 5'10," 160 to 180 pounds with stubble black hair and beard wearing brown pants and blue shirt." Deputy Morrison did not testify at the suppression hearing. Officer Pichon testified that he did not recall hearing this description and only recalled that "it was a Black male clad in dark clothing."

weapon possessed by a felon. According to the State, there was probable cause for the arrest based on the discovery of the weapon that arose out of the reasonable, articulable suspicion that warranted the detention of Mr. Williams and the *Terry* pat-down.

Defense counsel and the State stipulated that the incident occurred in August and that it was hot at this time of the year in south Louisiana.

At the close of the suppression hearing, the district court ruled there was "probable cause as to the stop," finding that a request for assistance was sent out and that the officer believed Mr. Williams matched the description of the suspect and initially detained him. The district court explained that the incident occurred at night, and even if there was not a call to officers for assistance, the fact that Mr. Williams was walking in the middle of Airline Highway at that time of night, and subsequent to the stop exhibited erratic behavior, is of concern to give officers "probable cause to the initial stop."

Regarding the "motion to suppress statement and motion to suppress evidence," the district court stated that the officer testified that he believed Mr. Williams was the suspect who had fled from another officer and that Mr. Williams was given his *Miranda* rights. The court stated that, after doing so, Mr. Williams volunteered that he was on parole, and incident to the arrest, the firearm was located "post-*Miranda*." Consequently, the district court denied Mr. Williams's motion to suppress statement and evidence and "noted" defense counsel's objection.

The Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. *State v. Abrego*, 21-166 (La. App. 5 Cir. 12/1/21), 334 So.3d 883, 888, *writ denied*, 21-1949 (La. 2/22/22), 333 So.3d 450. In an effort to discourage police misconduct in violation of those standards, evidence recovered as a result of

24-KA-568                                          19

an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. *State v. Farber*, 18-353 (La. App. 5 Cir. 11/14/18), 263 So.3d 457, 462. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. *State v. Key*, 23-167 (La. App. 5 Cir. 12/27/23), 379 So.3d 96, 115. Warrantless searches and seizures are *per se* unreasonable unless justified by one of the exceptions to the warrant requirement. *State v. Fuentes*, 22-89 (La. App. 5 Cir. 11/2/22), 353 So.3d 911, 915.

Law enforcement officers are authorized by La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence, to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity. *Terry v. Ohio*, *supra*; *State v. Fisher*, 19-504 (La. App. 5 Cir. 12/23/20), 307 So.3d 1204, 1220, *writ denied*, 21-130 (La. 5/4/21), 315 So.3d 219. Reasonable suspicion for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. *Fisher*, 307 So.3d at 1220. Police do not have to observe what they know to be criminal behavior before investigating. Instead, the requirement is that the officers have a reasonable suspicion of criminal activity. *State v. McKnight*, 22-499 (La. App. 5 Cir. 5/24/23), 366 So.3d 798, 804. Evidence derived from an unreasonable stop will be excluded from trial. *Id.*

The determination of reasonable grounds for an investigatory stop does not rest on the officer's subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. *McKnight*, 366 So.3d at 804. In determining whether an officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable

inferences that he is entitled to draw from the facts in light of his experience. A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained officer that might elude an untrained person. An officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incident of crimes are factors that may support reasonable suspicion for an investigatory stop. *Id.*

Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *State v. Jones*, 12-640 (La. App. 5 Cir. 10/30/13), 128 So.3d 436, 446. When evaluating the totality of the circumstances, a defendant's evasive conduct in response to police presence is a factor that is accorded significant weight. *Id.* The Louisiana Supreme Court has recognized, or implied, that the defendant's flight from police officers is the most important factor in the totality of the circumstances analysis. *Id.*

Once an officer stops a person pursuant to La. C.Cr.P. art. 215.1(B), the officer may conduct a limited pat-down frisk for weapons if he reasonably believes he is in danger or that the suspect is armed. *State v. Gilbert*, 23-121 (La. App. 5 Cir. 11/8/23), 377 So.3d 378, 387, *writ denied*, 23-1640 (La. 5/29/24), 385 So.3d 704. If, in the course of an Article 215.1 weapons frisk, an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the "plain feel" exception to the warrant requirement. *Id.*

In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); *State v. Adams*, 22-271 (La. App. 5 Cir. 5/10/23), 364 So.3d 1272, 1282. A district court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *Id.* In determining whether the district court's ruling on a motion to suppress is

correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing, but may also consider pertinent evidence presented at trial. *Id.* *See also State v. Siekmann*, 24-178 (La. App. 5 Cir. 2/5/25), 406 So.3d 509, 520; *State v. Dorsey*, 27,509 (La. App. 2 Cir. 11/1/95), 662 So.2d 857, 860; and *State v. Greenwell*, 32,249 (La. App. 2 Cir. 8/18/99), 746 So.2d 29, 38.

We find the record supports the district court's finding that Officer Pichon had reasonable suspicion to stop Mr. Williams. At trial, Deputy Morrison testified that after the suspect fled from him, he notified officers over the radio, informing them of the suspect's description, which was "approximately 5'7" to 5'10" . . . 140 to 170 pounds." He testified that the suspect was wearing a dark blue shirt, tan brown pants, and had a scruffy beard and hair.[9] Deputy Morrison stated that when he received a photo of Mr. Williams from the officers who arrested him, although he had his head tilted forward, Mr. Williams met the "general description" of the suspect who had fled from him. He testified that he told officers that the photo looked like the suspect and he would be there shortly to confirm.

At the suppression hearing, Officer Pichon testified that he and other officers were informed that a suspect had fled from Deputy Morrison, and they were called to the area. They were canvassing Airline Highway in response to the call for assistance, when they observed Mr. Williams walking in the middle of the highway, sweating profusely, and matching the description of the suspect, "a black male clad in dark clothing." Officer Pichon testified that he and Deputy McCubbins approached Mr. Williams and informed him that he would be detained pending an investigation because he matched the description of an individual they were looking for. Officer Pichon testified that Mr. Williams acted somewhat hostile and did not want to comply. According to Officer Pichon, after Mr. Williams complied and was handcuffed, Deputy Morrison was sent a photograph

---

[9] It is unclear whether Deputy Morrison conveyed this information when he requested assistance.

of Mr. Williams, and he confirmed that the photograph was the suspect who had fled from him. He stated that after the confirmation was received, he read Mr. Williams his *Miranda* rights and informed him that he would be placed under arrest. Mr. Williams voluntarily informed officers that he was on parole. Officer Pichon stated that when he proceeded to search Mr. Williams incident to the arrest, Mr. Williams put his hands down toward his back pocket. He asked Mr. Williams what he was reaching for and located a firearm in Mr. Williams's back pocket.

Mr. Williams argues that the description of "a black male clad in dark clothing" was too generic to equate to a reasonable suspicion, and the general description could not support a finding of reasonable suspicion under *Terry*, *supra*. We disagree. The testimony from both the suppression hearing and trial reflects that this is not the only factor from which Officer Pichon based his reasonable suspicion. It is unclear from the evidence presented how close in proximity Airline Highway was to the location in which the suspect had fled from Deputy Morrison. However, the testimony appears to reflect that Deputy Morrison made a call for officers to canvass the area to search for the suspect, who had fled from him at approximately 11:34 p.m. After the officers responded, they encountered Mr. Williams walking in the middle of Airline Highway. Officer Pichon commented this was in fact illegal.[10] The encounter with Mr. Williams occurred at approximately 11:54 p.m., twenty minutes after the suspect had fled from Deputy Morrison. Testimony reflected that Mr. Williams was sweating profusely and

---

[10] La. R.S. 32:216 provides, in pertinent part:

    A. Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent highway.

    B. Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction.

    \*\*\*

In addition to stopping Mr. Williams based on the reasonable suspicion that he was the suspect who fled from Deputy Morrison, it appears that Mr. Williams could have also been stopped based on a violation of La. R.S. 32:216.

acted hostile when he was approached by officers.  Under the circumstances, we find the record supports the district court's determination that the officers had reasonable suspicion to stop Mr. Williams.

**B.      Probable Cause**

An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense.  *State v. Barker*, 19-223 (La. App. 5 Cir. 12/11/19), 285 So.3d 581, 589.  Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime or was committing a crime.  *Id.*  While mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest.  *Id.*

A search incident to a lawful arrest is a well-recognized exception to a warrantless search.  *Barker*, 285 So.3d at 590.  In a search incident to a lawful arrest, a police officer can search the suspect's person and the area within his immediate control in order to remove weapons and prevent destruction of evidence.  *Id.*; *See State v. Ayo*, 08-468 (La. App. 5 Cir. 3/24/09), 7 So.3d 85, 100, *writ denied sub nom. State ex rel. Ayon v. State*, 09-1026 (La. 3/5/10), 28 So.3d 1006; *State v. Harris*, 00-1930 (La. App. 5 Cir. 4/11/01), 786 So.2d 798, 804. "Once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible in order to remove any weapon from his person and to prevent evidence from being destroyed." *State v. Snavely*, 99-1223 (La. App. 5 Cir. 4/12/00), 759 So.2d 950, 957, *writ denied*, 00-1439 (La. 2/16/01), 785 So.2d 840.

Here, testimony provided that Mr. Williams was first stopped because officers were looking for the suspect who had fled from Deputy Morrison.  Deputy Morrison testified that the subject who had fled from him would have been arrested

for "resisting arrest by flight."[11] While canvassing the area in response to the call for assistance, officers discovered Mr. Williams walking in the middle of Airline Highway at 11:54 p.m. Testimony reflects that Mr. Williams matched the description of the subject who had fled from Deputy Morrison. Mr. Williams was handcuffed for officer safety pending an investigation. At the suppression hearing, Officer Pichon testified that once he received the confirmation from Deputy Morrison that Mr. Williams was the subject who had fled from him, Mr. Williams was placed under arrest for the crime of flight from Deputy Morrison. He stated that he was about to conduct a search of Mr. Williams's person incident to the arrest, when Mr. Williams began reaching towards his back pocket and Officer Pichon asked him what he was reaching for. Officer Pichon then searched his person and discovered the firearm. Officer Pichon had confirmation from Deputy Morrison that Mr. Williams was the subject who had fled from him.

As the Louisiana Supreme Court noted in *State v. Johnson*, 363 So.2d 684, 689 (La. 1978), "[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime."

Based on the confirmation received from Deputy Morrison, we find the officers had the requisite probable cause to arrest Mr. Williams for the alleged crime of resisting an officer by flight. Accordingly, the circumstances at issue constituted probable cause to arrest Mr. Williams, the following search of Mr. Williams's person incident to the arrest was lawful, and the firearm was properly

---

[11] *See* La. R.S. 14:108(B)(1)(a).

seized. For these reasons, the district court properly denied the motion to suppress evidence. These assignments of error are without merit.

**ERRORS PATENT DISCUSSION**

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5. Cir. 1990). We note the following errors patent.

### *Post-Conviction Relief Advisal*

Louisiana Code of Criminal Procedure Article 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief. Further, La. C.Cr.P. art. 930.8(C) provides, in pertinent part: "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing[.]" Here, according to the transcript, on July 25, 2024, after sentencing Mr. Williams, the district court informed Mr. Williams that he had "two years after the date of judgment and conviction of sentence have been filed to file for post-conviction relief[.]" The minute entry from this date provides that the district court informed Mr. Williams that he had "two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief." Although the minute entry appears to provide the proper advisal, the transcript does not. Where there is a discrepancy between the transcript and the sentencing minute entry, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

If a district court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Britton*, 22-476 (La. App. 5 Cir. 5/10/23), 366 So.3d 652, 665. Accordingly, by way of this opinion, we advise Mr. Williams that no application for post-conviction relief, including applications that seek an out-of-

time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See Britton*, 366 So.3d at 665.

### *Mandatory Fine*

At the time the offense was committed by Mr. Williams,[12] La. R.S. 14:95.1(B) required a fine of not less than one thousand dollars nor more than five thousand dollars to be imposed. Here, the trial judge stated "the Court assesses the mandatory fine of $1,000." The trial judge then informed counsel that the court could set an ability to pay hearing, and defense counsel asked the judge to suspend the fine. The trial judge then suspended the fine "in consideration of the DOC sentence."

In *State v. Johnson*, 11-238 (La. App. 5 Cir. 12/28/11), 83 So.3d 1075, 1082, the defendant was fined $1,000.00 as part of his sentence for his conviction of La. R.S. 14:95.1, but the district court suspended the fine. This Court cited to its opinion in *State v. Jackson*, 07-975 (La. App. 5 Cir. 4/15/08), 985 So.2d 246, 252 n.4, where it "found no issue with the trial court's suspension of the mandatory fine imposed under La. R.S. 14:95.1." This Court found no corrective action necessary. *Johnson*, 83 So.3d at 1082. Accordingly, we find that no corrective action is needed in the instant matter regarding the mandatory fine.

## DECREE

For the foregoing reasons, Mr. Williams's conviction and twenty-year sentence for possession of a firearm by a convicted felon are affirmed.

**AFFIRMED**

---

[12]    *See Sugasti, supra*, 820 So.2d at 520.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 24, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

*Curtis B. Pursell*

CURTIS B. PURSELL
CLERK OF COURT

## 24-KA-568

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
BERTHA M. HILLMAN (APPELLANT)     CHRISTOPHER A. ABERLE (APPELLANT)     DARREN A. ALLEMAND (APPELLEE)
JULIET L. CLARK (APPELLEE)        THOMAS J. BUTLER (APPELLEE)

### MAILED
BERNARD WILLIAMS #509707
(APPELLANT)
CATAHOULA CORRECTIONAL CENTER
499 OLD COLUMBIA ROAD
HARRISONBURG, LA 71340

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
MATTHEW WHITWORTH (APPELLEE)
THERESA KING (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053